No. 23-1656

United States Court of Appeals
for the Fourth Circuit

TAMER ESCANDER,

*Appellant,*

*v.*

CHRISTINE WORMUTH,

*Appellee.*

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

RESPONSE BRIEF OF THE UNITED STATES

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:    SHARON C. WILSON
*Assistant United States Attorneys*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530

*Attorneys for Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................iii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF ISSUES ................................................................... 2

STATEMENT OF CASE ...................................................................... 3

STATEMENT OF FACTS .................................................................... 6

SUMMARY OF ARGUMENT.............................................................. 14

I.      LACK OF SUBJECT MATTER JURISDICTION…………….……... 14

II.     ADMINISTRATIVE EXHAUSTION AND ESTOPPEL…………… 14

III.    FAILURE TO DEMONSTRATE A PRIMA FACIE CASE OF
         DISCRIMINATION ORRETALIATION………………...…….….…..15

ARGUMENT..................................................................................... 17

I.      STANDARD OF REVIEW............................................................ 17

II.     SUMMARY JUDGMENT IS APPROPRIATE AS THERE
         IS NO SUBJECT MATTER JURISDICTION UNDER
         TITLE VII BECAUSE THE JOINT EMPLOYMENT
         DOCTRINE DOES NOT RENDER APPELLEE
         ESCANDER'S EMPLOYER............................................................ 18

         A. The Army was not Escander's "Joint Employer" ……………......... 18

III.    ALTERNATIVELY, THE DISTRICT COURT PROPERLY
         GRANTED SUMMARY JUDGMENT FOR FAILURE TO
         EXHAUST ADMINISTRATIVE REMEDIES AND
         PROPERLY DENIED EQUITABLE ESTOPPEL. .......................... 20

         A. The District Court Properly Found Failure to Exhaust……………. 20

         B. Equitable Tolling Does Not Apply. ................................................ 26

IV.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE DEMONSTRATES ESCANDER FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION OR RETALIATION. ....................................... 27

A. *Prima Facie* Claims of Discrimination and Retaliation. .................. 27

B. Escander Fails to Point to Evidence Sufficient to Establish a Genuine Issue of Material Fact on Adverse Employment Action .............. 28

C. District Court's Grant of Summary Judgment Should Be Affirmed..46

CONCLUSION................................................................................. 50

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................ 22

*Burlington Northern & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ................................................................ 28

*Butler v. Drive Auto. Indust. of Am., Inc.*,
  793 F.3d 404, 408-10 (4th Cir. 2015). ...................................... 19

*Coffey v. Chem. Specialties, Inc.,*
  *No.*92-2397, 1993 WL 318886 (4th Cir. Aug. 20, 1993)......................24, 43

*Dash v. Mayweather*,
  731 F.3d 303, 311 (4th Cir. 2013) ............................................ 50

*DiPaulo v. Potter*,
  733 F. Supp. 2d 666 (M.D.N.C. 2010) ...................................... 21

*English v. Pabst Brewing Co.*,
  828 F.2d 1047 (4th Cir. 1987) ................................................ 26

*Escander v. Wormuth*,
  No. 5:20-cv-589-BO……………………………………………….. 3, 19, 33

*Fields v. Verizon Servs. Corp.*,
  493 F. App'x 371 (4th Cir. 2012) (unpublished) ........................ 48

*Frahm v. United States*,
  492 F.3d 258 (4th Cir. 2007) .................................................. 18

*Francis v. Booz, Allen & Hamilton, Inc.*,
  452 F.3d 299 (4th Cir. 2006) .................................................. 49

*Harris v. Mayor & City Council of Baltimore*,
  429 F. App'x. 195 (4th Cir. 2011) (unpublished) ................................24, 43

*Jacobs v. N.C. Admin. Off. of the Courts*,
  780 F.3d 562 (4th Cir. 2015) ........................................ 24, 32, 43

*Johnson v. Cohen*,
    6 F. App'x 308 (6th Cir. 2001) (unpublished) ............................................. 21

*Kerr v. Marshall Univ. Bd. of Governors*,
    824 F.3d 62 (4th Cir. 2016) .................................................................17, 19

*Lovett v. Cracker Barrel Old Country Store, Inc.*,
    700 F. App'x 209 (4th Cir. 2017) (unpublished) ..................................passim

*Lyons v. City of Alexandria*,
    35 F. 4th 285....................................................................................31, 33

*Maryland Highways Contractors Ass'n v. State of Maryland*,
    933 F.2d 1246 (4th Cir.)...................................................................... 31

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................ 22

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)............................................................................. 3

*Murphy v. West*,
    172 F.3d 863, 1999 WL 64284 (4th Cir. 1999) .......................................... 21

*Pueschel v. Veneman*,
    185 F. Supp. 2d 566 (D.Md. 2002) .......................................................... 21

*Shaw v. Foreman*,
    59 F.4th 121 (4th Cir. 2023) ................................................................. 17

*Snow v. Napolitano*,
    No. 10-02530, 2013 WL 3717732 (W.D. Tenn. July 11, 2013) ................... 21

*Tankersley v. Almand*,
    837 F.3d 390 (4th Cir. 2016) ...............................................................17, 19

*Texas Dept. of Community Affairs v. Burdine*,
    450 U.S. 248 (1981)............................................................................. 3

*Tolan v. Cotton*,
    572 U.S. 650 (2014)................................................................... 23, 24, 43

*United States Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*,
  64 F.3d 920 (4th Cir. 1995) ........................................................................ 31

*United States v. McHan*,
  386 F.3d 620 (4th Cir. 2004) ............................................................... 17, 20

*United States v. Moore*,
  709 F.3d 287 (4th Cir. 2013) ............................................................... 17, 20

*United States v. Sherwood*,
  312 U.S. 584(1941) ..................................................................................... 18

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013)..................................................................................... 28

*West v. J.O. Stevenson, Inc.*,
  164 F. Supp. 3d 751 (E.D.N.C. 2016) ........................................................ 19

*Young v. N. Carolina Agr. & Tech. State Univ.*,
  No. 1:08CV894, 2011 WL 691241, at *4 (M.D.N.C. Feb. 18, 2011),
  *aff'd*, 460 F. App'x 285 (4th Cir. 2012) (unpublished).............................. 49

## Statutes

28 U.S.C. § 1291............................................................................................. 1

42 U.S.C. § 2000e–16(d) ............................................................................. 18

42 U.S.C. §§ 2000e ..................................................................................2, 14

## Rules

Fed. R. App. P. Rule 10(a) .......................................................................... 17

Fed. R. Civ. P. 10(c)..................................................................................... 19

Fed. R. Civ. P. 26(a)(1)(A)(ii) ................................................................... 3, 4

Fed. R. Civ. P. 26(d) ...................................................................................... 3

Fed. R. Civ. P. 45......................................................................................... 33

Fed. R. Evid. 801(c) ..................................................................................... 31

Fed. R. Evid. 802 ........................................................................................ 32

Regulations

29 C.F.R. § 1614.105 ................................................................................ 21

29 C.F.R. § 1614.105(a)(l) ............................................................... 20, 21, 25

## <u>STATEMENT OF JURISDICTION</u>

Appellant, Tamer Escander (Escander), appeals the district court's grant of summary judgment in favor of Appellee Wormuth, Secretary of the Army (Appellee or Wormuth), dismissing his claims by order filed June 6, 2023. Joint Appendix (J.A.) 323-37. Escander timely filed a notice of appeal on June 20, 2023. J.A. 339. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF ISSUES</u>

1.      Summary judgment is appropriate as there is no subject matter jurisdiction pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq.*, because the joint employment doctrine does not apply to render Appellee Escander's joint employer.

2.      Alternatively, the district court properly granted summary judgment for failure to exhaust administrative remedies under Title VII, dismissing all claims and denying equitable estoppel of the exhaustion defense.

*3.*      The district court properly granted summary judgment for failure to adduce sufficient evidence of the elements of a *prima facie* case of religious and national origin discrimination and retaliation.

## **STATEMENT OF CASE**

On December 22, 2019, the Complaint was filed in the United States District Court for the District of Columbia. *Escander v. Wormuth*, No. 5:20-cv-589-BO ECF, Docket Entry [D.E.] 1.

On September 23, 2021, the Amended Complaint was filed. J.A. 13-23.

On November 19, 2021, the Answer to the Amended Complaint was filed. J.A. 24-36.

On January 5, 2022, a Joint Rule 26(f) Report was filed wherein the parties requested a discovery period to close on July 1, 2022. D.E. 47, at ¶ B.5. On January 11, 2022, the Scheduling Order was filed. *Id.*, D.E. 48.

Discovery began on January 5, 2022, and closed on July 1, 2022. *Id.*, D.E. 47, at ¶ B.5; D.E. 48; Fed. R. Civ. P. 26(d). Escander conducted no discovery.[1] D.E. 51, at 2.

On July 22, 2022, the district court denied Escander's opposed motion to amend the scheduling order to conduct discovery. D.E. 53.

---

[1]   Appellant notes Appellee conducted no discovery. Brief at 15, ¶ 60. Escander, not Appellee, bears the burden of proof on discrimination and retaliation. *See*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-56 (1981). Escander designated the Report of Investigation (ROI) from the administrative claim as the documents he intended to use to support his claim. *Escander*, No. 5:20-cv-589-BO, D.E. 77-6; J.A. 325; *see* Fed. R. Civ. P. 26(a)(1)(A)(ii).

On July 26, 2022, the dispositive motion deadline was re-set to September 12, 2022. D.E. 55.

On September 12, 2022, Wormuth filed a motion for summary judgment [D.E. 56], supporting memorandum [D.E 57], statement of material facts [J.A. 37-48], and appendix. J.A. 49-283.

On December 9, 2022, after receiving extensions from Appellee's counsel, Escander filed a response in opposition to summary judgment, [D.E. 68], response to Wormuth's statement of material facts [J.A. 284-290], and an appendix [J.A. 291-317] that included documents, produced for the first time, from Escander's Equal Employment Opportunity Commission (EEOC) administrative claim against his employer, Multilingual Solutions, Inc. (MLS).

On January 30, 2023, Wormuth filed a reply to Escander's opposition to summary judgment [D.E. 73] and response to Escander's opposition to Wormuth's statement of material facts. J.A. 318-322. Wormuth also moved to strike the previously undesignated[2] documents Escander produced outside of the discovery period [D.E. 75, 76].

On June 7, 2023, the district court granted summary judgment in favor of Appellee Wormuth and denied the motion to strike. J.A. 323-37.

---

[2]    *See* Federal Rule of Civil Procedure 26(a)(1)(A)(ii).

4

On June 20, 2023, Escander filed a notice of appeal. J.A. 339.

## STATEMENT OF FACTS

The Department of Defense (DoD) awarded a multi-vendor contract to four contractor staffing firms to provide foreign language, regional expertise, and culture (LREC Program) instruction in support of the United States Special Operations Command (SOCOM). J.A. 38-39, ¶ 5.  Per the agreement (LREC contract), J.A. 182-89, a task order was issued for each class or group of classes. J.A. 38-39, ¶ 5. Under the LREC contract, the government was required to evaluate the vendor's or contractor's performance under the contract and required the contractor to submit a program/plan for both preservice and in-service professional development of its instructors. J.A. 39, ¶¶ 6-7. The vendors were to provide management of the LREC program, to include overall supervision and coordination of work required under the contract, as well as recruiting, screening, and hiring of personnel. J.A. 40, ¶ 12. The LREC contract further required the vendors to supervise and evaluate all vendor personnel, including by observing and evaluating LREC instructors and managing teaching methodology. *Id.*

The government provided the materials, facilities, and equipment for performance of the LREC contract. J.A. ¶ 11. Instructor hours, including Escander's, were set by the contract. J.A. ¶ 8. The LREC contract provided that the services provided by the vendors were non-personal services and that no

6

employer-employee relationship existed between the government and the vendor or its employees. J.A. 40-41, ¶ 13.

From 2012 to 2014, Escander worked for staffing firms as a contract Arabic instructor in the Center for Language and Culture (Language Center), SOCOM, at the United States Army John F. Kennedy Special Warfare College and School (SWCS), Fort Bragg[3], North Carolina. J.A. 37, ¶ 1; J.A. 315. In 2015, Escander also worked one day as a substitute Arabic instructor at the Language Center through another vendor, Global Technology Solutions. J.A. 45, ¶ 28.

Dr. Amir Nabipour was the Head of the Central Asian, Middle East and French languages, J.A. 109:6-7, and he was supervised by Terry Schnurr, Chief of the Language Division, J.A. 190, ¶ 2. Dr. Nabipour supervised ten civilian employees, and he did not supervise contract employees or control contractor employment status, J.A 114:11-16. *See* J.A. 141:10-14 (Whitehead testimony); J.A. 189, ¶¶ 4.6.5, 4.6.51, 4.6.5.2,4.5.63 (LREC).

In 2014, Escander was hired by Multilingual Solutions, Inc. to replace an instructor (who died) to teach Arabic at the Language Center pursuant to Multilingual Solution's contract with the Army. J.A. 41, ¶ 14; J.A. 63:12; J.A. 312. David Putnam (Putnam), the onsite program manager for Multilingual

---

[3]  Fort Bragg has been renamed Fort Liberty. Reference herein is to Fort Bragg as the record developed below refers to the base by its former name.

Solutions, was Escander's supervisor. J.A. 41, ¶ 15; J.A. 61:11-16. Putnam approved Escander's leave requests and Multilingual Solutions prepared his performance evaluations and determined his rate of pay and benefits without Army input. J.A. 41, ¶ 16. Army officials periodically visited instruction areas to ensure that contractors like Multilingual Solutions were performing adequately under the terms of their respective contracts. J.A. 42, ¶ 17.

Manny Echevarria was an Army Quality Assurance (QA) specialist. J.A. 309. In March 2014, Echevarria was managing the QA cell and he scheduled Mr. Nabipour to observe and complete a "Quality Assurance Surveillance Plan observation," pursuant to the LREC, of the Arabic language class that Escander was hired to take over. J.A. 38, ¶ 3; J.A. 123:2-3; J.A. 309.

On March 10, 2014, Escander reported to the Language Center for a teaching cycle that ended on July 7, 2014[4]. *Id.* Escander "took over the class halfway through the course[.]" J.A. 62:12; J.A. 205. On March 11, 2014, Dr. Nabipour conducted the quality assurance observation of Escander's class. J.A. 42, ¶ 17. On March 27, 2014, another government observer conducted quality assurance observations of Escander's classes. *Id.* These evaluations were

---

[4] The task order for his class "ended on or about 2 May 2014." J.A. 191, ¶ 5. Escander's "contract was only for 2 months because he was replacing someone with 2 months left on their contract." J.A. 312.

provided to the contracting officer and his/her representative for overall quality assurance of government contracts. *Id.* Escander "heard from a co-worker . . . that Dr. Nabipour had said that Escander had been teaching without a lesson plan" and was otherwise not meeting all required standards. J.A. 15, ¶ 16; J.A. 205.

"On April 1, 2014, after receiving the QA observations[s] from [the Army's] QA branch, Mr. Putnam, the site supervisor for Multilingual Solutions (MLS), sought out Dr. Nabipour for clarification of assessments." J.A. 308. Escander alleges that his supervisor, Putnam, confronted him in class on April 1, 2014. Escander allegedly tried to complain about Dr. Nabipour's observation of his class, but Putnam refused to listen, stating "I don't want to hear any word from you. If I hear word from you or Dr. Nabipour, you are fired." J.A. 82:20-21; J.A. 83-84:25-2; J.A. 16, ¶ 19; J.A. 302. Dr. Nabipour's evaluation reveals that he did not find Escander to have been teaching without a lesson plan. J.A. 275-80. In fact, Dr. Nabipour noted that he "enjoyed observing [Escander's] class" and that the "[s]tudents as well as teacher were motivated and very active in the classroom." J.A. 280.

Subsequently on April 2, 2014 (12:38 a.m.), Escander sent an email to Lieutenant Colonel (LTC) Simpson, Director for the SWCS Language, Regional Studies, and Culture Department, to two representatives of Multilingual

Solutions, and to a representative of Senator Hagan's Office with subject line "urgent-Discrimination on ft. Bragg" to complain about Dr. Nabipour. J.A. 302, 308. Immediately, LTC Simpson directed QA specialist Echevarria to conduct an independent assessment of Escander's class. J.A. 309. On April 2, 2014, Echevarria conducted the review. J.A. 263-68. Echevarria's findings did not favor Escander. In summary, he found: 1) Escander "had an incomplete lesson plan (L") written in English[;]" 2) "[a]ctivities appeared to be chosen at random because there were no activities or tasks written in the incomplete LP[;]" 3) "[t]here was no indication in the incomplete 'LP' of learning activities which promote critical thinking and problem solving skills[;]" 4) "[Escander] was not facilitating learning amongst each student because the class goals, objectives and outcomes were not clearly stated in a lesson plan and there were no activities/tasks created to support them[;]" and 5) "[a] stronger student dominated the classroom." J.A. 309; *see* J.A. 263-68. LTC Simpson also "reviewed existing QA reports, interviewed Dr. Nabipour and the military class leader of Mr. Escander's class." J.A. 309. The military class leader did not support Escander's allegation "that the students 'are outraged at the accusations.'" *Id.*

One day after Escander's email message, on April 3, 2014, LTC Simpson produced a summary of his investigation and his conclusion. J.A. 308-09.

10

> [T]here has been no discrimination in this case and it does not warrant further investigation. Mr. Escander, for some reason, has attributed statements and actions to Dr. Nabipour that [Dr. Nabipour] did not say or do, possibly basing those attributions in Dr. Nabipour's ethnicity as a Persian, and assuming that because [Dr. Nabipour] was natively Iranian[5], that he must be Muslim[6], when Dr. Nabipour claims atheism.

J.A. 308 (Escander's Appendix); J.A. 108:23-24.

Terry Schnurr, Dr. Nabipour's supervisor, declared that Escander "completed his work and was not terminated prior to the end of his contract with Multilingual Services[]" and Escander was not suspended or prohibited from working as a teacher at the Language Center. J.A. 45, ¶ 28; *see also* J.A. 312. Schnurr further testified that at the conclusion of Multilingual Service's contract, four companies bid for the next task order, and it was awarded to a different company. J.A. 45, ¶ 28. Mid Atlantic Professions, Inc., d/b/a SSI, not MLS, was awarded the contract for the language class for which the teaching cycle began on July 21, 2014. J.A. 42, ¶ 18; 44, ¶ 24.

Jacqueline Whitehead (Whitehead) was the instructional supervisor and methodology trainer for SSI at the Language Center. J.A. 44, ¶ 24; J.A. 135:4-5. On July 1 or 2, 2014, Escander alleges, after submitting his resume to SSI for the

---

[5]   Escander recites he was compelled to complain about Dr. Nabipour "to defend [him]self and [his] country." J.A. 302.

[6]   Escander testified "Nabipour is a Muslim name by default." J.A. 64:12-13.

upcoming class cycle in July, J.A. 314, a fellow instructor, Markos Saad[7], told Escander that Escander could not substitute teach for Saad in July under SSI's contract because Whitehead stated that Escander had been suspended from teaching at the SWCS. J.A. 44, ¶ 26. Though she denies conversing with Saad about Escander, J.A. 143:12-22, Whitehead testified that her SSI supervisor, SSI program manager Natalie Vines, J.A. 136:9-12, told her "don't hire [Escander]. . . [h]e's banned from post", J.A. 141:22-23, because, "[Escander]'s a moron and he got into (sic) with Dr. Nabipour." J.A. 44, ¶ 24; J.A. 137:4-5, 13-25; J.A. 141:22-23; J.A. 146:9-18.

On August 6, 2014, Escander visited the Equal Employment Opportunity Commission (EEOC) Office in Raleigh complaining about his employer, Multilingual Solutions, and "seeking information only at this time[] . . . [p]re-charge counseling was completed. [Escander] elected not to file a charge. J.A. 311 (EEO Charge No. 433-2014-02521C). The EEOC records reflect the Respondent was Escander's employer, Multilingual Solutions, Inc. *Id.*

On September 11, 2014, Escander returned to the EEOC office to continue his claim against Respondent Multilingual Solutions, alleging it would not continue his employment because Dr. Nabipour got him suspended from

---

[7] Whitehead testified that Saad was a relative of Escander, J.A. 144:1.

providing language instruction service at SWCS because of his national origin (Egyptian), religion (Coptic Christian), and reprisal for Escander "carpools to work" with another language instructor "who has filed a complaint of discrimination against Dr. Nabipour." J.A. 312 (EEO Charge No. 433-2014-02521C). MLS, however, was unable to rehire Escander because SSI, not MLS, was awarded the contract for Arabic language instruction for the next teaching cycle. J.A. 42, ¶ 18; 44, ¶ 24. The EEOC Right to Sue letter issued on August 14, 2015. J.A. 313.

Escander called the Army EEO office and sought counseling on October 14, 2014, allegedly with the assistance of the EEOC in Raleigh. J.A. 19, ¶ 39; J.A. 45, ¶ 29; J.A. 207-211. After counseling failed, Escander filed a formal EEO complaint with the Army on December 1, 2014. J.A. 46, ¶ 30. The Army investigated Escander's claims from December 30, 2016, through April 17, 2017. J.A. 46, ¶ 32. On September 19, 2019, the Army EEO Office issued a Final Agency Decision in which it found that Escander was not subjected to discrimination. J.A. 243-55.

The SWCS conducted annual EEO training, which Dr. Nabipour attended, and it posted EEO posters and bulletin in the work area. J.A. 47, ¶ 35.

# SUMMARY OF ARGUMENT

## I.    LACK OF SUBJECT MATTER JURISDICTION

Though the district court did not address subject matter jurisdiction, the evidence in the record demonstrates it is lacking and, thereby, summary judgment should be affirmed on this basis.  It is undisputed that Escander was not a federal employee, thereby, there is no waiver of sovereign immunity under Title VII, 42 U.S.C. §§ 2000e, *et seq.* to adjudicate his discrimination and retaliation claims. The joint employment doctrine does not apply to render Appellee Escander's joint employer for Title VII purposes because the record demonstrates that the Army did not exercise sufficient control over the terms and conditions of his employment to render it his joint employer under governing Fourth Circuit precedent. Thereby, summary judgment should be affirmed for lack of subject matter jurisdiction.

## II.    ADMINISTRATIVE EXHAUSTION AND ESTOPPEL.

Summary judgment was properly granted for failure to exhaust Title VII administrative remedies, dismissing all claims and denying equitable estoppel. Records from the Raleigh EEOC office document that Escander did not intend to file an EEO charge until outside the 45-day limit for beginning an EEO claim. His testimony, that he timely contacted the Army but was told he could not file a claim because he was a contractor, was insufficient to survive summary

judgment because it was contradicted by competent unimpeached records of the Raleigh EEOC, an uninterested third party.

Likewise, Escander's testimony did not suggest the Army deceived him—and the EEOC records confirm—that when Escander finally was ready to file an EEO charge, he did so. Escander's failure to adduce sufficient competent evidence to establish he intended to begin the Title VII exhaustion process or, alternatively, to support the Army deceived him, is fatal to his Title VII claim.

III. FAILURE TO DEMONSTRATE A *PRIMA FACIE* CASE OF DISCRIMINATION OR RETALIATION.

Summary judgment was properly granted for failure to adduce sufficient evidence of a genuine issue of material fact on an adverse employment action, an element common to a *prima facie* case of religious and national origin discrimination and retaliation claims. The adverse employment action alleged was a "ban" from teaching on the Army post imposed by the head of the Army's language department, Dr. Nabipour. Escander attempted to demonstrate a "ban" through a recruiter, Whitehead, who testified that she was told by her supervisor, Vines, that Escander was banned from teaching on the Army post. Reliance on this witness fails for two reasons. First, Whitehead's testimony is competent only to establish *that* Whitehead was "told." Whitehead's testimony could not establish whether Vines' statements were true because there is no competent evidence in the record to provide a proper foundation for Vines' statements.

Second, even if accepted as true, critically, Whitehead's testimony never linked a purported ban to the Army. Whitehead did not testify that Vines attributed a ban to the Army or to Dr. Nabipour. To the contrary, Whitehead testified that she did not know the source of the ban and she never observed mistreatment of Escander by the Army or Dr. Nabipour.

Further, Whitehead's testimony does not provide a basis reasonably to infer a "ban from post" imposed by the Army. Instead, it provides a strong basis to infer that a "ban," if any, was imposed by Whitehead and Vines' company, SSI, to give it an edge in the Department of Defense contract bidding process. Escander's behavior was sufficiently egregious and public that Vines not only knew of it—despite his being employed by another vendor (MLS)—but she branded him a "moron" for it. Vines' company had been losing bid after bid to MLS. When her company finally was awarded the task order, Vines told Whitehead *not* to hire Escander for a position on post because he was a "moron" who "got into it with" Dr. Nabipour, the client's department head.

The remainder of Escander's evidence, even when viewed in the light most favorable to Escander, also is insufficient to demonstrate a genuine issue on an alleged "ban." Escander's allegations against Dr. Nabipour were contradicted by objective evidence in the record, and he never offered record evidence that he was rejected for employment by contracting firms. Further, it is undisputed that he was not fired from, reprimanded, or suspended, and he completed the entire contract with MLS. MLS was not awarded the task order for the next teaching cycle so MLS could not re-hire Escander to work on post.

16

# ARGUMENT

## I.  STANDARD OF REVIEW.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court, *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023) (citation omitted), and "constru[ing] all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.*, (citation omitted).

The Court "may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court." *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (citing *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016)); *see also*, *United States v. Moore*, 709 F.3d 287, 293 (4th Cir. 2013) (citing, *United States v. McHan*, 386 F.3d 620, 623 (4th Cir. 2004) (observing that we are "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court" (internal quotation marks omitted)). The record on appeal includes "the original papers and exhibits filed in the district court, . . ., and a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. Rule 10(a).

## II.    SUMMARY JUDGMENT IS APPROPRIATE AS THERE IS NO SUBJECT MATTER JURISDICTION UNDER TITLE VII BECAUSE THE JOINT EMPLOYMENT DOCTRINE DOES NOT RENDER APPELLEE ESCANDER'S EMPLOYER.

The United States is immune from suit except to the extent "it consents to be sued...." *United States v. Sherwood*, 312 U.S. 584(1941). "Congress has, admittedly, waived sovereign immunity in Title VII suits where the federal government is the employer. 42 U.S.C. § 2000e–16(d)." *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007).

It is undisputed that Escander was employed by a contractor staffing firm at the time of the alleged discrimination in 2014. J.A. 14, ¶ 8; J.A. 15, ¶ 14; J.A. 59:15-19; J.A. 208, 311-12. Escander attempts to meet his burden to demonstrate this court's subject matter jurisdiction by invoking the joint employment doctrine. Appellant's Brief at 3, ¶ 4. Escander's Title VII claims fail because, after six months for discovery, the undisputed evidence in the record reveals the Army did not exercise sufficient control over the terms and conditions of Escander's employment to render it his joint employer as required to establish his Title VII claims under governing Fourth Circuit precedent.

### A.    *The Army was not Escander's "Joint Employer".*

Under the joint employment doctrine, an entity can be found to be an individual's "employer" if the entity exercises sufficient control over the terms and

18

conditions of the individual's employment. J.A. 11, ¶ 14; *see West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 763 (E.D.N.C. 2016) (citing *Butler v. Drive Auto. Indust. of Am., Inc.*, 793 F.3d 404, 408-10 (4th Cir. 2015)). Though fully briefed by both parties, *Escander*, No. 5:20-cv-589-BO, D.E. 57, 69, 73, the district court did not rule on the joint employment issue because the failure to exhaust and failure on the *prima facie* case were dispositive. J.A. 330.

Appellee maintains its position that Escander's Title VII claims fail because the undisputed evidence in the record reveals the Army did not exercise sufficient control over the terms and conditions of Escander's employment to render it his joint employer as required to establish his Title VII claims under governing Fourth Circuit precedent. *Escander*, No. 5:20-cv-589-BO, D.E. 57, at 9-13; *see West*, 164 F. Supp. 3d at 763 (citing *Butler*, 793 F.3d at 408-10); Fed. R. Civ. P. 10(c). At best, Escander's allegations establish that he performed linguist services as a federal contractor at SWCS's facilities; he used SWCS's equipment in performing his job; and SWCS periodically performed observations for quality assurance pursuant to the terms of the contract. Without more, Escander fails to meet his evidentiary burden to show that SWCS was his joint employer under *Butler*'s hybrid test and this failure is fatal to his Title VII claims.

Summary judgment may be affirmed on this basis. *See Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (citing *Kerr v. Marshall Univ. Bd. of*

*Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016)); *see also*, *United States v. Moore*, 709 F.3d 287, 293 (4th Cir. 2013) (citing, *United States v. McHan*, 386 F.3d 620, 623 (4th Cir.2004) (observing that we are "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court" (internal quotation marks omitted)).

## III.   ALTERNATIVELY, THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND PROPERLY DENIED EQUITABLE ESTOPPEL.

Assuming *arguendo* that the Army at the JFK SWCS was Escander's joint employer, the district court correctly found that Escander failed to demonstrate intent to begin the EEO process within 45 days, thereby, he failed to exhaust administrative remedies. J.A. 331. The district court reviewed the record as a whole and credited, but ultimately rejected Escander's testimony as contradicted by the records introduced by Escander of a disinterested entity, the Raleigh EEOC. J.A. 311-12. For the same reason, the records Escander introduced negate his argument for equitable tolling. J.A. 331. Summary judgment, therefore, should be affirmed.

### A. The District Court Properly Found Failure to Exhaust.

To pursue a Title VII claim of discrimination against the federal government, within 45 days of the alleged adverse action, 29 C.F.R. §

1614.105(a)(l), "a [claimant] must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination'". J.A. 331 (citing *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 569 (D. Md. 2002)); *see DiPaulo v. Potter*, 733 F. Supp. 2d 666, 672 (M.D.N.C. 2010); *Johnson v. Cohen*, 6 F. App'x 308, 311 (6th Cir. 2001) (unpublished) (noting and applying EEOC interpretation as not plainly erroneous or inconsistent with 29 C.F.R. § 1614.105); *Snow v. Napolitano*, No. 10-02530, 2013 WL 3717732, at *3 (W.D. Tenn. July 11, 2013). "Claims about conduct not reported to an EEO Counselor within 45 days will be considered not exhausted." J.A. 330 (citing *Murphy v. West*, 172 F.3d 863, 1999 WL 64284 at *3 (4th Cir. 1999)).

To survive summary judgment as the non-movant, Escander had to point to evidence, viewed in his favor, sufficient to demonstrate a genuine dispute about a fact necessary to his claim, "that is, the evidence is such that a reasonable jury could return a verdict for" him. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (unpublished) (internal quotations omitted). Here, Escander's three arguments fail. The district court correctly found that Escander failed to meet his burden to point to evidence in the record that supports there is a genuine issue of fact for trial on his intent to begin the

EEO process, namely, that he contacted the Army EEO office in July 2014 and was turned away. J.A. 331.

First, Escander argues he met his burden to demonstrate intent to begin the EEO process with his declaration testimony that he went to the Army EEO office in the second week of July, he spoke to a person who stuttered at the front desk, and he was told he could not file a complaint because he was a contractor. Brief at 19-20. Escander alleges the district court erred by improperly making a credibility determination when it "ignored" his declaration, but "accepted" the Army's representation that "'had [Escander] attempted to request EEO counseling [from the Army] in July 2014 there would have been a record made, and no such record exists." Brief at 19 (citing J.A. 330). Escander's argument fails as the text of the decision demonstrates the district court did not "credit" either declaration over the other. The court considered both parties' declarations without critique. J.A. 330.

Indeed, when considering summary judgment, courts are to review the record as a whole, consider evidence for and against its ultimate findings, not weigh evidence, and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (under Rule 56, courts must review the record "taken as a whole"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). Here, the district

court found lack of intent to begin the EEO process based on objective evidence, the disinterested EEOC's August 6, 2014 record that "does not reflect any charge having been filed on that date against either the Army or MultiLingual Solutions. Accordingly, . . . [Escander] failed to timely exhaust his claims." J.A. 331.

In so doing, the district court appropriately acknowledged contradictory evidence, namely, Escander's testimony that "he d[id] not know why [the EEOC] recorded that he did not exhibit an intent to file a charge of discrimination" on August 6, 2014. J.A. 331; *see Tolan v. Cotton*, 572 U.S. 650 (2014) (court's failure to credit competent contradictory evidence constituted improper weighing evidence and resolving disputed issues). Escander offers no evidence that he filed an EEO charge against any entity within 45 days of the alleged adverse action despite doing so just outside the 45 days, in September 2014. J.A. 312; *see* Brief at 17-21. Summary judgment, therefore, should be affirmed.

Second, Escander argues the district court erred because he "proffered more than enough circumstantial evidence to survive [] summary judgment[.]" Brief at 21. Escander points to his testimony, taken together with the EEOC records, and the Army's intake record when he finally, out-of-time, contacted the Army EEO office. Brief at 21. This argument fails because, even when viewed

23

in the light most favorable to him, this evidence is insufficient to meet his burden to demonstrate a genuine dispute of fact for trial on his intent to begin the EEO process within 45 days.

Escander's declaration alone is insufficient evidence for a reasonable jury to find that he intended to begin the EEO process. While a non-movant can survive summary judgment based on his declaration, that is so only when the evidence presented is "competent," when a proper foundation appears for the facts presented in the declaration, and when corroborated or uncontradicted by other objective evidence in the record. *See Coffey v. Chem. Specialties, Inc.*, No. 92-2397, 1993 WL 318886 at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self-serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact); *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x. 195 (4th Cir. 2011) (unpublished) (summary judgment was inappropriate, in part, where non-movant's affidavit was corroborated by other witnesses and evidence in the record); *see Tolan v. Cotton*, 572 U.S. 650 (2014) (court erred in weighing evidence and reaching factual conclusions contrary to non-movant's competent evidence—testimony of eyewitnesses supported by other evidence in the record); *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562 (4th Cir. 2015) (same). Here, Escander's testimony is contradicted by objective evidence of a disinterested party, the EEOC's August 6, 2014 intake

form that documents no EEO charge filed. Hence, his declaration is insufficient to meet his burden.

Escander argues that his declaration testimony is corroborated by his "contemporaneous[]" statement to the Army EEO counselor in October 2014, Brief at 20. It is not. His statement recorded in the Army intake form that "he contacted the Garrison EEO Office the 2nd week of July 2014, and was told he could not file a complaint" does not corroborate his current testimony for two reasons. First, it is ambiguous as to which entity, MLS or the Army, he sought to file an EEO charge. Second, just a few weeks later, the EEOC's August 6, 2014 EEOC intake record documents that Escander was looking for "information only at this time[,]" J.A. 311, and the information sought was directed at how to file an EEO charge against his employer, MLS. *Id.* Hence, his statement in the Army EEO intake form does not corroborate his current testimony. Summary judgment, therefore, should be affirmed.

Last, Escander argues, in essence, that a failure to contact the Army EEO within 45 days should be excused because he "amply satisfied" the purpose of filing an administrative charge with an agency, namely, to permit the agency to address discrimination claims. *See* Brief at 17. Escander cites no authority to support that contact within 45 days is optional or that it can be satisfied by other means. *Id.*; *see* 29 C.F.R. § 1614.105(a)(1). The district court's grant of summary

judgment on all claims for failure to exhaust administrative remedies should be affirmed.

### B. Equitable Tolling Does Not Apply.

Alternatively, Escander argues that equitable tolling should apply to estop Appellee from relying on failure to exhaust because he "testified that he had been prevented from filing a timely complaint by someone in the Army EEO office[.]" Brief at 18.

"To invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.'" J.A. at 9 (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). The district court correctly held that Escander's declaration, considered in the light most favorable to Escander, insufficient to warrant equitable tolling. J.A. at 331. Escander's declaration alleged the Army told him, in July 2014, that he could not file suit because he was not a federal employee. J.A. 294, ¶¶ 2-4. Escander did not allege and he did not proffer evidence from which to reasonably infer that the Army prohibited him from filing an EEO complaint. J.A. 331. Further, the undisputed evidence reflects that he subsequently contacted the Raleigh EEOC field office and filed a charge. J.A. 331. Summary judgment, therefore, should be affirmed.

## IV. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE DEMONSTRATES ESCANDER FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION OR RETALIATION.

Additionally, assuming *arguendo* that the Army at the JFK SWCS was Escander's joint employer, the district court correctly found that Escander failed to meet his evidentiary burden to demonstrate a *prima facie* case of discrimination or retaliation. J.A. 333, 335. The district court properly reviewed the whole record, credited the evidence upon which Escander relies, but rejected his argument that the evidence was sufficient to establish a genuine issue of material fact for trial on an element common to both claims: adverse employment action. J.A. 333-36. Summary judgment on all claims, therefore, should be affirmed.

### A. *Prima Facie* Claims of Discrimination and Retaliation.

To establish a *prima facie* case of discrimination, here "'failure to rehire, plaintiff must show (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." J.A. 333 (citations omitted)). To establish a *prima facie* case of retaliation, plaintiff must demonstrate: (1) he engaged in a protected activity under Title VII, (2) his employer took action against him that a

reasonable employee would find materially adverse, and (3) his employer took the adverse action because of the protected activity. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-70 (2006). Claimant's participation in a protected activity must be the "but-for" cause of the adverse employment action, *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013), and claimant must prove "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer," *id.* at 360.

## B. Escander Fails to Point to Evidence Sufficient to Establish a Genuine Issue of Material Fact on Adverse Employment Action.

The district court granted summary judgment on all claims because Escander had "not proffered sufficient evidence at this stage which would show that he suffered an adverse employment action or that he was rejected for a position under circumstances giving rise to an inference of discrimination[,]" J.A. 333, or that "would create a genuine issue of material fact as to whether he suffered adverse action because of any alleged retaliation." J.A. 336.

To survive summary judgment before the district court and under *de novo* review by this Court, Escander, as the non-movant, must point to evidence sufficient to demonstrate a genuine dispute regarding an adverse employment action. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (unpublished) (internal quotations omitted). The evidence must be

enough that "a reasonable jury could find" an adverse action and that Escander's religion, national origin, or reprisal was a basis for that action. *Id.* Escander fails to meet his burden on the evidence in the record.

The adverse employment action Escander alleges is suspension by Dr. Nabipour from "work[ing] as a language instructor"—"not suspen[sion] from entering Fort Bragg." J.A. 56:9-13; J.A. 62:20-24; J.A. 66:12-19; J.A. 69-70:25-4; J.A. 71:2-4; J.A. 98:23-25; J.A. 106:1-8. Because of the alleged suspension, Escander claims he has not been hired since 2015 by any of the several language staffing vendors for any of their "many" contracts at various jobsites. J.A. 105:24-25. Summary judgment should be affirmed because Escander fails to point to sufficient evidence in the record, viewed in his favor, to support that there is a genuine issue of fact for trial on "suspension" from teaching by Dr. Nabipour. In short, Escander fails to point to sufficient evidence to support that a reasonable jury could find that he was not hired by language staffing firms after his contract with MLS ended in May/July 2014 because Dr. Nabipour, the "person accused of discrimination[,]" "suspended" or "blocked" him from working as an Arabic language instructor at Fort Bragg *and* Dr. Nabipour did so based on Escander's religion, national origin, or in retaliation for Escander's alleged protected activity.

1. <u>The evidence on which Escander relies does not support suspension by Dr. Nabipour.</u>

Escander argues that Whitehead's testimony combined with that of Thomas Erian (Erian), Saad, and his own is sufficient to survive summary judgment. Brief at 25-26. Escander's argument fails because, even when viewed in the light most favorable to him, none of these witnesses alone or in combination provide direct evidence of, or evidence from which a reasonable jury could infer, that Dr. Nabipour "suspended" Escander as an Arabic language instructor. Nor could a reasonable jury infer that Dr. Nabipour discriminated against him based on his religion, national origin, or in retaliation for his alleged assistance of Erian's EEO claim.

   a. Whitehead does not provide evidence sufficient to establish or from which an adverse employment action reasonably can be inferred.

Escander relies on Whitehead to establish "suspension". Brief at 25. Whitehead testified that, in May 2014, her boss, SSI program manager Vines, told her not to hire Escander because he was "banned from post" because he is a "moron" who "got into it" with Dr. Nabipour. Brief at 25; J.A. 333; J.A. 44, ¶ 24; J.A. 137:4-5, 13-25; J.A. 141:22-23; J.A. 145-46:24-6; J.A. 146:9-18.

Whitehead's testimony includes impermissible hearsay. Her own testimony as to what she heard is competent to show that her boss, Vines, made a statement. But Whitehead's testimony is not competent to establish the truth

of what Vines stated. Fed. R. Evid. 801(c); 802. Uncontradicted testimony of a witness where the facts support a foundation for the facts declared, such as personal/firsthand knowledge, can support summary judgment. *Lovett*, 700 F. App'x at 212. Hearsay, generally, cannot. J.A. 334 (citing *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n. 4 (4th Cir. 2022)). Hearsay may be considered on summary judgment in limited circumstances, but like self-serving declarations of non-moving parties, only when the record reflects the evidence is competent, a proper foundation for the testimony appears in the record, and the evidence is uncontradicted/unimpeached by other competent evidence in the record. See *United States Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920 (4th Cir. 1995) ("hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment[,]" but where HUD's evidence is uncontradicted and sufficient foundation for the declaration was found in other competent evidence, documents and declarations, in the record that corroborated the facts presented in the HUD declaration, it is appropriate evidence to support summary judgment) (citing *Maryland Highways Contractors Ass'n v. State of Maryland*, 933 F.2d 1246, 1251–1252 (4th Cir.), *cert. denied*, 502 U.S. 939 (1991)).

Here, there is no evidence in the record to establish a proper foundation for Vines' statement that Escander actually was "banned from post[.]" And

Escander does not argue that there is. Brief at 25, fn. 3. The undisputed evidence in the record demonstrates a lack of proper foundation and thus Vines' statement is simply inadmissible hearsay. Fed. R. Evid. 802. First, it is undisputed that MLS had the contract for Arabic language instruction so Escander worked for MLS, not SSI. J.A. 15, ¶ 14. Therefore, there is no basis reasonably to infer that Vines would have been consulted, and acquired firsthand knowledge, about Escander's behavior no matter how outrageous as he was not an employee under her supervision as SSI program manager. Similarly, there is no basis reasonably to infer that SSI program manager Vines would have firsthand knowledge about the Army's or Dr. Nabipour's position on Escander, an employee of another contracting vendor, SSI. *See Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562 (4th Cir. 2015) (the court noted reasonable inferences "likely" and "unlikely" based on competent evidence in the record).

Second, Escander testified that, after he complained to LTC Simpson about Dr. Nabipour, there was an investigation, including an Army investigator who questioned Escander's students. Thereafter, "everyone knew" that Escander complained about Dr. Nabipour and everyone "thought [he] was crazy." J.A. 88:5-6, 23-24; 89:3-5. It is undisputed that SSI did not employ Putnam who, on April 1, 2014, threatened to fire Escander for his complaints about Dr. Nabipour and that neither SSI nor Vines were copied on Escander's April 2, 2014

Escander-Simpson-MLS-Hagan email messages that ensued. J.A. 82:20-21; J.A. 83-84:25-2. This evidence provides a basis reasonably to infer that Vines learned through rumor or gossip that Escander "got into it" with Dr. Nabipour and, thereby, Vines dubbed Escander a "moron".  Hence, there is no basis in the record reasonably to infer a proper foundation for Vines' statement, thereby, it properly is disregarded for the truth of the matter asserted, that Escander was "banned from post."[8] J.A. 334 (citing *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4).

Alternatively, even if Vines' statement is accepted as true, neither Whitehead's testimony nor Vines' statement establishes that the Army or, critically, that Dr. Nabipour was the source of an alleged ban. Whitehead did

---

[8]    In a footnote, Escander asserts that district court erred in disregarding Vines' testimony as hearsay because he could "remedy the hearsay issue" by "[i]ssuing a subpoena compelling Vines to testify" at trial that was "not logistically or legally possible previously[.]" Brief at 25, fn. 3. Escander conducted no discovery during the six months authorized for discovery, *Escander*, No. 5:20-cv-589-BO, D.E. 53, and he offers no explanation why he could not issue a subpoena to Vines during discovery. The evidence reflects that Vines was reachable through her LinkedIn account. J.A. 160:11-13. Subpoenas are available during discovery to compel nationwide attendance at a deposition because counsel travel to the deponent. Fed. R. Civ. P. 45. Subpoenas to appear at trial do not have nationwide reach as the trial is not mobile. *Id.* Hence, Escander's argument on cure lacks merit. Furthermore, on February 24, 2017 Whitehead testified regarding Vines' alleged statement. J.A. 52. Escander offers no explanation why—in the intervening 6.5 years—he has failed to obtain so much as an affidavit from Vines.

not testify that the Army or Dr. Nabipour banned Escander. J.A. 134-62. Whitehead testified that she did not know why Escander was "banned" outside of Vines' statement and Whitehead denied that Dr. Nabipour or the Army told her the Escander was banned. J.A. 159:19-22; *see* J.A. 139:10-12; J.A. 140:12-15. Whitehead testified also that she did not discuss Escander with Putnam, Escander's MLS program manager, despite learning of the alleged ban in May 2014 and her testimony that she goes to bat for her instructors[9]. J.A. 142:20-22.

On the other hand, Whitehead's testimony provides overwhelming facts from which a reasonable jury can infer that Vines' statement regarding a "ban" was an internal strategic business decision by SSI, not a decision by the Army or Dr. Nabipour. The undisputed evidence reflects Escander was not hired initially to teach the Arabic language class in March 2014; he was a substitute who took over the class halfway through the teaching cycle when the instructor died. J.A. 63:12-13. Midway through the course, but Escander's second day

---

[9]  Whitehead testified

> [w]hat happened with Mr. Escander, I do really not know. I have not heard anything, I have not witnessed, and I have not taken care of it, SSI direct supervisor because if that would have been under my belt, I would have stepped up for the instructor and investigated what is going on here. And I did for others, you know, but I really don't know.

J.A. 156:9-15 (emphasis added).

instructing, March 11, 2014, Dr. Nabipour observed Escander's class, J.A. 205,
looked at his lesson plan, J.A. 205, asked students how things were going, J.A.
90:15-17, but did not speak to Escander, J.A. 94:15. Escander thought it odd and
discriminatory that the Director of the Language Program would observe his
class, J.A. 205 ("this was unheard of in the past"), and "unfair" that Dr.
Nabipour would speak to Escander's students. J.A. 90:17-19; J.A. 94:14-18. On
March 27, 2014, another person observed Escander's class. J.A. 269-74.

On April 1, 2014, Escander's supervisor, MLS supervisor Putnam, came
to Escander's class, Escander complained to Putnam that Dr. Nabipour was
discriminating against him by observing his class and having others observe his
class at an observation rate higher than other instructors, and Escander testified
that gossip was beginning among students and instructors: "talking what's
wrong with [Escander]? Why do you being (sic) observed that much?" J.A. 95:7-
15. Putnam refused to discuss the matter, J.A. 16, ¶ 20, and told Escander "if I
hear anything from Nabipour; you are fired." J.A. 82:20-21; J.A. 83-84:25-2.

Hours later, just after midnight (12:38 a.m.), Escander sent an email
message addressed to LTC Simpson, military head of the Language Center; to
two MLS employees (one was MLS HR); and to then-U.S. Senator Kay Hagan's
office complaining that Dr. Nabipour was discriminating against him, in part,
by falsely telling his supervisor, Putnam, that Escander did not have a lesson

35

plan. J.A. 302. Later that same day, LTC Simpson instructed QA specialist Echevarria, J.A. 123:2-3, to observe Escander's class, J.A. 309. Also on that same day, Echevarria performed the observation and found Escander lacking, in part, based on his lesson plan. J.A. 82:18; J.A. 309. Escander's complaints became public knowledge and Escander testified that "everyone knew and said are you crazy to file against Mr. Nabipour[,]" J.A. 88:5-6, 23-24; 89:3-5.

Whitehead testified that the contracting environment had changed, where once the contracting community was one big international family, J.A. 140:3-7, now the contracting companies and the military treated the instructors like "cattle" and did not respect them for their education and the work that they do. J.A. 146:18-22. Dr. Nabipour did not like "most of the contract instructors" and "the current cadre on post" treated "vendors per se . . . . like we are kind of second grade citizens[]" who "don't know what we [are] doing." J.A. 153:10-17.

Against this backdrop, Whitehead testified that the competition among at least four vendors for the language instruction contracts aboard Fort Bragg was fierce—"the four vendors were fighting like sharks to win that particular cycle[,]" the contract after the MLS contract under which Escander was employed by MLS. J.A. 149:18-20. When Whitehead came back to Fort Bragg, "MLS had the supremacy . . . had the most classes on Ft. Bragg[,]" J.A. 148:11; J.A.150:1-2; Putnam was the MLS program manager, J.A. 130:19-22; MLS

"under David Putnam was winning one class after the other every six weeks," J.A. 155:3-4; but after Whitehead came back May 2014, "SSI started . . . winning every cycle[.]" J.A. 150: 2-3.

Taken together, the reasonable inference is that Vines' statement regarding a "ban" from language instruction aboard Fort Brag was imposed, not by the Army, but instead by SSI for a strategic competitive advantage in the Darwinian defense contracting environment—in essence, kill or be killed. MLS had reigned supreme for some time but began to lose to SSI when Whitehead returned to Fort Bragg. At the same time, while MLS's success was receding, Escander not only complained about Dr. Nabipour, the client's Director, and an employee of the agency, but Escander also went over Putnam's head to MLS HR. Escander also, egregiously, went outside the chain of command and complained not only to the client (LTC Simpson), but also to North Carolina's then-United States Senator, Kay Hagan. J.A. 302, 308-09. This was likely the final straw for Escander's reputation. "[E]very one knew," to use Escander's words, that he was a "complain[er]. J.A. 69:20. Hence, Vines' statement, viewed in context with all of the evidence, reasonably suggests that Escander's alleged "ban from post" was SSI-imposed: a strategic business decision not to align with Escander whom "everyone knew" to be "crazy"/"moron" so SSI could prevail over MLS for the next contract, which it did. J.A. 88:5-6; J.A. 88:23-24; J.A. 89:3-5.

For these reasons, Whitehead's testimony fails to provide sufficient evidence to establish or from which an adverse employment action reasonably can be inferred.

> b. Whitehead does not provide sufficient evidence to establish or from which religious or national origin discrimination reasonably can be inferred.

Escander attempts to connect "suspension" to religion/national origin, by arguing that Whitehead's "banned from post" testimony, when considered in context with her testimony regarding religion, is sufficient evidence on adverse employment action to survive summary judgment. Brief at 25-26. Specifically, Escander points to Whitehead's testimony that there was an "attitude of segregation religiously," J.A. 138:9-10, a "program manager had stated that '[t]he Egyptians are tripping,' J.A. 138, and that '[t]he attitude on Fort Bragg is kind of [globally] bad . . . geared towards Arabic speakers," J.A. 139:8, because "over the years there was always a little bit of a dislike' between the Coptic Christians and Muslims. J.A. 138-39." Brief at 25-26.

Escander's argument fails for the same "parsing" and "out-of-context" arguments that he asserts constitute error in the district court's opinion. Brief at 25. First, Whitehead never testified that any religious "segregation" or "dislike" derived from the Army. J.A. 138-139; J.A. 140:12-15. Relevant here, she testified that she never saw discrimination against Escander. J.A. 140:12-15. Second,

38

Whitehead testified that the "tripping" comment was made by a contractor, program manager Briscoe, not by Army personnel or, critically, Dr. Nabipour. J.A. 138:11-16. Third, the reference to preference for Arabic speakers does not advance Escander's argument as he speaks Arabic and he was hired as an Arabic language instructor. J.A. 15, ¶ 14. The testimony regarding dislike between Coptic Christians and Muslims also was not linked to Army personnel, J.A. 138-139, and further undermines Escander's claim. Escander incorrectly believes that Dr. Nabipour is Muslim when, in fact, he is an atheist. J.A. 108:23-24; J.A. 308. Last, Whitehead testified that contractors were unfairly treated like cattle by the contracting vendors and the Army, but not by Dr. Nabipour. J.A. 144:22-25; J.A. 146:15-22. Whitehead testified that Dr. Nabipour and the military did not like *all* contract language instructors, J.A. 153:10-12, and requests not to return an instructor to the classroom always were based on instructor quality: "not a good instructor". J.A. 153:5-6. Fatal for Escander's claim, Whitehead testified that she never saw Dr. Nabipour mistreat Escander. J.A. 140:12-15.

Escander's argument also fails when considered against the totality of the evidence in the record. Viewed in the light most favorable to Escander, Whitehead's testimony does not demonstrate a genuine issue for trial on religious or national origin discrimination. Whitehead's testimony about "the usual attitude of segregation religiously" is explained by Escander's testimony

that religious identity is obvious among instructors and religious animosity among instructors, "common" at Fort Bragg, was imported not created or perpetuated by the Army. J.A. 77:23-25.

Escander testified that "a lot of religion issue [were] brought from the Middle East to this area[,]" into the language department at Fort Bragg, namely, "religion hate other religion for no reasoning because you are—you believe in a thing." J.A. 77-78:23-2. At work (Fort Bragg) "everyone was aware of where everyone from" as they talk about it at work, "[e]veryone knows. So, like, where you're from? You're Iranian; I'm Egyptian." J.A. 63:18-24. "Even by name you can know [someone's] religion." J.A. 64:10. For example, "Thomas is a Christian name no matter what . . . Escander is a Christian name by default." J.A. 64:5-6. "Nabipour is a Muslim name by default." J.A. 164: 12-13. Further, Erian testified that "Arabic dialects are not like English dialects[.]" J.A. 300, ¶ 13. "Because each dialect of Arabic is significantly different, the national origin of each instructor is obvious . . . to anyone at the school." J.A. 300, ¶ 14.

Escander's assumptions that Dr. Nabipour is Muslim, therefore, Dr. Nabipour hates and acts to discriminate against him are not borne out by any objective evidence. In fact, the sole act that Escander alleged—that Dr. Nabipour "falsely" informed Escander's supervisor Putnam that his lesson plan was deficient—is contradicted by Dr. Nabipour's written report of his observation of

40

Escander's class. In the report, Dr. Nabipour concludes that he "enjoyed obser[ving] [Escander's] class" and that the "[s]tudents as well as teacher were motivated and very active in the classroom[.]" J.A. 280.

For these reasons, Whitehead's testimony fails to provide sufficient evidence to establish or from which religious or national origin discrimination reasonably can be inferred.

   c. Erian does not provide sufficient evidence to establish or from which an adverse employment action reasonably can be inferred.

Escander argues that Whitehead's testimony combined with Erian's testimony is sufficient to survive summary judgment. Brief at 25-26. Erian did not testify during the administrative phase. His current declaration notes that he filed an EEO complaint against Dr. Nabipour wherein he alleged discrimination based on religion and national origin. J.A. 298, ¶ 4. Erian does not disclose the outcome and, this information would be public information as rulings and settlements with the government alike are not confidential. J.A. 298-300. The Department of Defense revoked Erian's security clearance and Escander wrote a declaration supporting Erian's appeal of his security clearance revocation. J.A. 299, ¶¶ 8-9. Nothing in Erian's declaration establishes an adverse employment action, "suspension" from instructing aboard Fort Bragg, in Escander's case.

41

d. Saad does not provide sufficient evidence to establish or from which an adverse employment action reasonably can be inferred.

Escander argues that Whitehead's testimony combined with Saad's testimony is sufficient to survive summary judgment. Brief at 25-26. Saad's testimony adds nothing. He testified that Whitehead told him in July 2014 that Escander could not substitute for him because Escander was banned "by the Army." J.A. 165:13-19. However, Whitehead, whom Escander argues testified "honest[ly]," Brief at 25, denied that she ever discussed Escander with Saad. J.A. 143-44:12-16.

Further, Whitehead testified that it was the "new habit" for instructors to find their own substitutes and Putnam told Whitehead that Saad found his own substitutes. J.A. 148:10-19. Hence, Whitehead opined that it must have been Putnam who told Saad that Escander was banned from teaching at Fort Bragg. J.A. 148:18-20.

e. Escander's testimony does not provide sufficient evidence to establish or from which an adverse employment action reasonably can be inferred.

Last, Escander argues that his testimony is sufficient to survive summary judgment. Brief at 25-26. A non-movant can survive summary judgment with his declaration alone, but only if the facts presented are competent, when a proper foundation appears for the facts presented in the declaration, and when corroborated or uncontradicted by other objective evidence in the record. *See*

42

*Coffey v. Chem. Specialties, Inc.*, No. 92-2397, 1993 WL 318886 at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self-serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact); *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195 (4th Cir. 2011) (unpublished) (summary judgment was inappropriate, in part, where non-movant's affidavit was corroborated by other witnesses and evidence in the record); *see Tolan v. Cotton*, 572 U.S. 650 (2014) (court erred in weighing evidence and reaching factual conclusions contrary to non-movant's competent evidence—testimony of eyewitnesses supported by other evidence in the record); *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562 (4th Cir. 2015) (same).

Escander's testimony during the administrative investigation, J.A. 54-108, and his declaration, J.A. 294-97, do not support an adverse employment action because he does not offer any competent, uncontradicted evidence. Escander does not offer any firsthand account of Dr. Nabipour discriminating against him.

Further, the circumstantial evidence of discrimination that he offers is contradicted by other competent evidence. First, Escander testified that Dr. Nabipour informed his supervisor, Putnam, that Escander did not have a lesson plan and was otherwise deficient as an instructor. J.A. 82:16-19. The objective

43

evidence—Dr. Nabipour's written evaluation dated March 11, 2014—concluded with the comment "I enjoyed observe (sic) this class. Students as well as teacher were motivated and very active in the classroom, specially after[.]" J.A. 280.

Second, Escander asserts that Dr. Nabipour's observing his class was discriminatory because "it was unheard of in the past" that the head of the department conducted observations. J.A. 205. The LREC contract mandates quality reviews and Escander offers no evidence to dispute Dr. Nabipour's testimony that the QA specialist assigned Nabipour to observe his class. J.A. 183, ¶ 1.5.2 (Quality Assurance). Escander found Dr. Nabipour's method of observing his class to be "terrify(ing)" and "intimidate(ing), J.A. 302, and not "fair." J.A. 90:17-19. Looking at the lesson plan, not speaking to Escander (not interrupting instructor/instruction) and surveying the students on their experience with the new instructor (2nd day) objectively are reasonable for a quality assurance review. *See* J.A. 205.

Third, Escander alleges that on his first day of instruction, Dr. Nabipour saw him in the parking lot and looked at him in a way that unnerved him. J.A. 99:16-19 ("that look"). Fourth, Escander testified that, since 2015, he has sent resumes to contract language instructor vendors, and he never hears back from them. Escander claims that others who have less education, such as high school degrees, get hired while he, who has two undergraduate degrees and is working

44

on a masters degree, has not been hired for any of the vendors many contracts at various sites. J.A. 78:13-23; J.A. 105:24-25. Escander offers no documentary proof that he has applied and been rejected. J.A. 54-108. Despite this type of evidence being within his exclusive control, Escander offers none. During discovery he could have subpoenaed records of third parties, but he did not. Hence, Escander did not present any resumes of any of the individuals allegedly hired in *lieu* of him. J.A. 1-339. Review of Escander's resume reflects he earned an accounting degree in 2013 and a degree in finance in 1999, but does not reflect any degrees, certifications, licenses or even any classes in teaching. J.A. 315-16. Hence, there is no basis reasonably to infer that Escander was not selected for contract language instructor positions because of an alleged suspension from instructing aboard Fort Bragg.

Last, Escander submitted no evidence of any job postings/position descriptions, applications for language instructor position, rejections for any positions, loss of income (tax returns)—all evidence that would be in his possession. The two email messages that he produced, one to SSI in May 2014 and the Buffalo Group in September 2014, viewed in the light most favorable to Escander, show only inquiries, not rejections. J.A. 314-17.

Here, individually and in the aggregate, viewing Whitehead's, Erian's, Saad's, and Escander's testimony in the light most favorable to Escander, "isn't

enough to create a genuine issue of material fact" that Escander was not hired by subsequent language vendors because he was "banned" from post or "suspended" from teaching, no less that he was banned/suspended by Dr. Nabipour or otherwise was denied re-hiring under circumstances that suggest discrimination or retaliation. *See Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 213 (4th Cir. 2017) (unpublished). As such, summary judgment is appropriate and the district court should be affirmed.

**C. District Court's Grant of Summary Judgment Should Be Affirmed.**

Escander's arguments notwithstanding, the district court correctly found that Escander failed to meet his burden to point to evidence in the record that supports there is a genuine issue of fact for trial. J.A. 331. The district court correctly held that Escander's national origin and religious discrimination and retaliation claims fail because he has not proffered sufficient evidence to show that he suffered an adverse employment action or was rejected for a position under circumstances giving rise to an inference of discrimination. J.A. 333, 336. Specifically, the district court noted the undisputed evidence documented that Escander "was not terminated from his position prior to the end of the [MLS] contract[,] . . . he received no written reprimand or notice from the Army that he could not be re-hired by any of the vendors selected to provide language teachers under the LREC contract[,]" and there is no evidence in the record of

"a written rejection of [Escander's] application for employment by any vendor after he attempted to gain re-hire following the close of the [MLS] contract." J.A. 333. Further, even though "the absence of a formal rejection from employment" alone was not fatal, the district court found persuasive that "the undisputed record . . . shows that [Escander] *was* re-hired to teach at the Language Center following the end of the Multilingual [Solutions] contract, albeit for one day as a substitute teacher for Global Technology Solutions." J.A. 333-34.

The district court also reviewed Escander's testimony and the testimony of the witness upon whom Escander relies for the crux of his claim, Whitehead, and found that neither was sufficient to meet Escander's ultimate burden to demonstrate that the Army discriminated against him based on his religion or national origin. J.A. 334. First, the district court found Escander's testimony on the key material fact speculative at best. J.A. 334. Specifically, Escander's testimony that he did not receive an email back from MLS after he sent MLS his resume and "he was not offered further employment by Global Technology Solutions because Dr. Nabipour 'blacklisted' him from working on any site at Fort Bragg is, at best, mere speculation." J.A. 334.

Second, the district court identified Whitehead's testimony as Escander's "best evidence" on the issue of adverse employment action, namely, rejection

under circumstance that give rise to an inference of unlawful discrimination. J.A. 333. Whitehead was the instructional supervisor and methodology trainer for SSI at the Language Center. J.A. 338. Whitehead testified that her supervisor, Ms. Vines, told her that Escander "was 'a moron' who had 'gotten into it with Dr. Nabipour" and he "had been 'banned from post.'" J.A. 333. Whitehead testified that Dr. Nabipour never told her that Escander "was not to be re-hired"; she never talked with Nabipour, Putnam or anyone else at the Language Center about Escander or in the Army about Escander. J.A. 333-34.

The district court noted, even when viewed in the light most favorable to Escander, that Whitehead's testimony did not advance Escander's claim. She expressly denied knowing why Escander had been banned, denied that Dr. Nabipour, the person Escander accuses of discrimination, Brief at 22, told her Escander was banned due to his religion or national origin, and she never saw Escander being inappropriately treated to discriminated against by Dr. Nabipour or anyone else." J.A. 334.

The district court properly found Escander's testimony that he assumed that he was blocked by Dr. Nabipour because he has not been hired again to work by the contractors who supply language instructors to SWCS, was purely speculation inadequate to overcome this motion for summary judgment. *See Fields v. Verizon Servs. Corp.*, 493 F. App'x 371, 377 n.6 (4th Cir. 2012)

(unpublished) (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (finding unsupported speculation insufficient to create a genuine issue of material fact). As such, the district court properly granted the Army summary judgment.

Last, as the district court properly found Escander adduced no probative evidence which would create a genuine issue of material fact as to whether he suffered adverse action because of any alleged retaliation. As discussed above, the evidence contains no written reprimand or suspension from teaching at the Language Center issued by the Army, Dr. Nabipour, or any of the vendors that supplied language instructors. The failure to hire a candidate for a position for which he applied can be considered an adverse action for purposes of a retaliation claim. *See*, *e.g.*, *Young v. N. Carolina Agr. & Tech. State Univ.*, No. 1:08CV894, 2011 WL 691241, at *4 (M.D.N.C. Feb. 18, 2011), *aff'd*, 460 F. App'x 285 (4th Cir. 2012) (unpublished). But Escander did, in fact, teach at the Language Center after Dr. Nabipour allegedly suspended him from teaching. And, as discussed above, Escander has not raised an issue of material fact as to whether any alleged failure to re-hire Escander by vendors that held the LREC contract after Multilingual Solutions was attributable to Dr. Nabipour or any other Army employee. For these reasons, the district court correctly determined that Escander's reliance on "conclusory allegations, mere speculation, [and] the

49

building of one inference upon another" to support his claims, insufficient to survive summary judgment. J.A. 336-37, citing *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## CONCLUSION

On *de novo* review, the record amply supports the district court properly granted Appellee's motion for summary judgment dismissing Escander's claims. Escander failed to show sufficient evidence to overcome summary judgment, namely, that he timely exhausted administrative remedies, equitable tolling applied, or to establish a *prima facie* case of discrimination or retaliation. Accordingly, the district court's judgment should be affirmed.

No oral argument is necessary.

Respectfully submitted, this 15th day of November 2023.

MICHAEL F. EASLEY, JR.
*United States Attorney*


BY:   */s/ Sharon C. Wilson*
      SHARON C. WLSON
      *Assistant United States Attorney*
      150 Fayetteville Street, Suite 2100
      Raleigh, North Carolina 27601
      Telephone: 919-856-4530

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ☐ _____     Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ☒ 10,855     Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B))*.

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

/s/ *Sharon C. Wilson* _____
Sharon C. Wilson
*Assistant United States Attorney*