NO. 23-1656

In The

# United States Court of Appeals

For The Fourth Circuit

TAMER ESCANDER

Plaintiff-Appellant

v.

CHRISTINE WORMUTH

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF NORTH CAROLINA      AT  WESTERN DIVISION

REPLY BRIEF FOR PLAINTIFF-APPELLANT

| KELLY B. MCCLANAHAN, ESQ.<br>NATIONAL SECURITY COUNSELORS<br>4702 LEVADA TERRACE<br>ROCKVILLE, MD  20853<br>301-728-5908 | SHARON C. WILSON<br>150 FAYETTEVILLE STREET<br>SUITE 2100<br>RALEIGH, NC  27601<br>919-856-4026 |
|---|---|
| Counsel for Plaintiff-Appellant | Defendant-Appellee |

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENT ..................................................................................................... 1

      I.    THE JOINT EMPLOYMENT DOCTRINE APPLIES ............... 3

      II.   ESCANDER EXHAUSTED ADMINISTRATIVE REMEDIES 7

      III.  ESCANDER ESTABLISHED A *PRIMA FACIE* CASE ............ 10

CONCLUSION ................................................................................................ 15

CERTIFICATE OF COMPLIANCE ............................................................. 16

# **TABLE OF AUTHORITIES**

**Cases:**                                                                                                                    **Pages**

*\*Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011) ..... .......... .......... .......... .......... 15

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)...... .......... .......... .......... .......... 3

*\*EEOC v. Thompson Contr., Grading, & Utils, Inc.*, 333 Fed. App'x 768 (4th Cir. 2009)... .......... .......... .......... .......... .......... .......... .......... .......... .......... 4

*French v. Assurance Co. of Am.*, 448 F.3d 693 (4th Cir. 2006)... .......... .......... 10

*Hooven-Lewis v. Caldera*, 249 F.3d 259 (4th Cir. 2001) .. .......... .......... .......... 15

*Huffman v. OPM*, 263 F.3d 1341 (Fed. Cir. 2001).. .......... .......... .......... .......... 15

*Jackson v. Kimel*, 992 F.2d 1318 (4th Cir. 1993).... .......... .......... .......... .......... 4

*Rutila v. Dept. of Trans.*, 12 F.4th 509 (5th Cir. 2021) ..... .......... .......... .......... 3

*\*Singleton v. Wulff*, 428 U.S. 106 (1976)...... .......... .......... .......... .......... 10

*United States v. Moore*, 709 F.3d 287 (4th Cir. 2013) ...... .......... .......... .......... 3

*United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry*, 792 Fed. App'x 249 (4th Cir. 2019) ...... .......... .......... .......... .......... .......... .......... .......... .......... 3

*Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022) ...... .......... .......... .......... .......... 10

## SUMMARY OF ARGUMENT

The District Court erred when it found that Appellant Tamer Escander ("Escander") had not exhausted his administrative remedies and that, even if he had not, that he was not entitled to equitable tolling because of the Army's refusal to allow him to file a complaint in July 2014 when he first tried. It also erred when it held that he had not established a *prima facie* case for discrimination or retaliation, primarily due to its treatment of disputed facts as undisputed and its impermissible elevation of the testimony of the Army's witnesses at the expense of the testimony of Escander's witnesses.

When given a chance to refute these arguments, the Army instead proceeded to engage in a systematic rewriting of history and the record before attempting to renew an argument which is not before the Court before making a full-throated defense of several arguments it never raised before the District Court *at all*. To the extent that the Army does offer arguments in the proper context, it has failed to refute any of Escander's points, and this leaves this Court with the only logical choice: holding that the District Court erred and remanding the case to the District Court, with or without specific instructions.

## ARGUMENT

Escander seeks a reversal of the District Court's final judgment of 7 June 2023. Because the District Court declined to adjudicate the joint employment issue,

1

this Court should not revisit that issue, although Escander will briefly explain why, if it does choose to do so, it should find that the joint employment doctrine applies. Regarding the multiple arguments that the Army makes for the first time in this proceeding, the Court should soundly reject them as not being passed upon below, although, in the interest of a complete response, Escander will briefly explain why the record and the Army's own arguments contradict these new claims.

Escander will focus this Reply on briefly addressing the most problematic issues with the Army's arguments, none of which effectively refute any of Escander's contentions, in roughly the order in which they are presented in the Army's brief.[1]

---

[1] Escander's decision to follow the course of the Army's brief should not be interpreted as a concession that the Army has properly framed the issues, or even that the issues discussed by the Army are properly before the Court; it is solely to assist the Court in matching the Army's arguments with Escander's counterarguments. Similarly, Escander has elected not to repeat himself unnecessarily, so if he does not address an argument or a claim raised by the Army herein, that is simply an indication that he stands behind the corresponding countervailing statement in his Brief. Specifically, he will not respond to factual allegations made by the Army (Resp. Br. of the United States, Dkt. #23, at 6-13 (filed Nov. 15, 2023) [hereinafter Army's Br.]) which are contrary to the factual statements he already provided in his Brief (Br. for Pl.-Appellant, Dkt. #20, at 2-16 (filed Oct. 2, 2023) [hereinafter Escander's Br.]), since the Court has enough information to reach its own conclusions from the parties' respective citations to the record about which party is accurately representing the record.

## I. THE JOINT EMPLOYMENT DOCTRINE APPLIES

Despite acknowledging that "the district court did not rule on the joint employment issue" (Army's Br. at 19), the Army proceeds to summarily encourage the Court to affirm the decision on this ground, citing the rule that the Court may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." (*Id*. at 18-20 (quoting *United States v. Moore*, 709 F.3d 287, 293 (4th Cir. 2013)).) As an initial matter, while the Court undeniably has this authority, it exercises it sparingly in cases of summary judgment. In fact, a survey of Lexis-Nexis decisions from this Court citing *any* of the four cases cited by the Army for this proposition found only *one* case where the lower decision involved summary judgment, and in that case the Court, despite reserving the right to do so, still limiting its ruling to the arguments ruled on by the district court. *See United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry*, 792 Fed. App'x 249 *passim* (4th Cir. 2019).

The reason for the Court's forbearance in this regard is obvious if the search is expanded. In the words of the Fifth Circuit, it is better to decline to "seek out alternative grounds on which we might uphold the judgment" because "we are a court of review, not of first view." *Rutila v. Dept. of Trans.*, 12 F.4th 509, 511 (5th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). *See also*

3

*EEOC v. Thompson Contr., Grading, & Utils, Inc.*, 333 Fed. App'x 768, 769, 772 (4th Cir. 2009) (remanding case instead of addressing summary judgment argument "because the district court did not address the issue" despite authority to do otherwise) (citing *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993)). As the Court did in *Thompson*, so should it do in this case. However, in the interest of completion, Escander will address this issue on the merits, and to a significantly greater extent than the Army's two-page summary. (Army's Br. at 18-19.) Because the Army did not make any particularized arguments on this issue, Escander will respond to the arguments made by the Army before the District Court, DE

 First, the Army argued that there is no genuine issue of material fact about whether Dr. Amir Nabipour ("Nabipour") told Multi-Lingual Solutions ("MLS") that he did not want Escander teaching at the school. DE #57 at 10. The Army elided the more basic question of whether Nabipour would tell contract firms that he did not want any particular instructor teaching a class, and whether the firms would staff their respective contracts according to his opinions. Jacqueline Whitehead ("Whitehead") testified that that was exactly the case. JA153-JA154. For the purposes of joint employment doctrine, that settles the question. There is a genuine issue of material fact about whether the Army is Escander's joint employer if Nabipour could ban him from working at the school, even if he did not do so. The fact that Whitehead also testified that her supervisor Natalia Vines

4

("Vines") had informed her that he had, JA149, JA 193, is simply an additional reason to find for Escander on this question.

The Army then argued that there is no genuine issue of material fact about whether the Army "set Plaintiff's work priorities or provide[d] him with direction as to how to accomplish his work." DE #57 at 11. The Army also argued that the school did not even "set[] Plaintiff's work hours." *Id*. at 12. These allegations are similarly disproven. On the first point, Escander testified that "all language instructors at the school followed the same curriculum (depending on language) and were responsible for teaching the same material." JA296. *See also* JA299. Escander then added that all grades were turned in to the Army, not the instructors' contract supervisors. JA296. As for work hours, two of the Army's witnesses testified unequivocally that the instructors' work hours were set by contract. JA190, JA191. All this is ignoring the uncontroverted fact that the Army performed "Quality Assurance" classroom observations, which are the epitome of "evaluating Plaintiff's performance." DE #57 at 12.

The Army then pivoted to claiming that "there is no evidence in the record that [the John F. Kennedy Special Warfare College and School ("SWCS")] ever provided him with any formal or informal training." *Id.* Escander testified that all instructors, be they government or contractor employees, must attend periodic training sessions with an Army employee, in which they cover general topics, like

5

how to interact with students, what skills were more important to teach, etc. JA295. For example, they were directed in these trainings to emphasize oral language skills over reading and writing. JA295.

The similar training of both government and contract instructors similarly demonstrates the falsity of the Army's next statement, that "there is no record evidence that Plaintiff's duties as an Arabic language instructor were akin to the duties of any SWCS employee, or that there was little to no effective difference between the work performed by him and the work performed by RMDA employees." DE #57 at 12. Both Escander and Thomas Erian ("Erian")—the former a contract instructor and the latter a government employee instructor—testified that there is no practical difference between the two types of instructors. Erian testified that they both "followed the same curriculum and taught the same courses in the same facility." JA299. Escander also testified to this fact, adding that "[i]t would not be unusual for a particular course to be taught by a contract instructor one cycle and a government employee instructor another cycle," JA296, and concluding that "[s]tudents would have no reason to know if a particular instructor was a government employee or a contractor from the way the class was taught," JA296.

While a jury may ultimately disagree as to whether there was an employer-employee relationship between the Army and Escander, the Court cannot say that

6

there are no genuine issues of material fact, and so the Army's argument must be rejected.

## II.  ESCANDER EXHAUSTED ADMINISTRATIVE REMEDIES

The Army's first significant allegation attempts to rewrite history by claiming that, contrary to Escander's demonstration of how the District Court placed more value on the Army's proffered declaration over his own, "the text of the decision demonstrates the district court did not 'credit' either declaration over the other . . . [and that] [t]he court considered both parties' declarations without critique." (Army's Br. at 22 (citing JA330).) However, immediately after making this claim, the Army argues that "the district court appropriately acknowledged contradictory evidence" *about Escander's first visit to the Equal Employment Opportunity Commission* ("EEOC") Field Office in August 2014. (*Id.* at 23.) The problem with this argument is that the first visit to the EEOC Field Office only matters if the Court finds that there is no genuine issue of material fact supporting the Army's claim that Escander did not attempt to initiate the Equal Employment Opportunity ("EEO") process in *July*. If the District Court "did not 'credit' either declaration over the other," then it would have found that a genuine issue of material fact existed regarding Escander's first alleged attempt to initiate the EEO process, and it would not have needed to even *consider* the later visits to the EEOC Field Office. It is for this reason that the Army's later contention that "Escander's

7

testimony is contradicted by objective evidence of a disinterested party, the EEOC's August 6, 2014 intake form that documents no EEO charge filed" (*id.* at 24-25) is also meritless, since that document, even if accepted as accurate, has no relevance to whether he attempted to initiate the process *at Fort Bragg*.

That comment also reflects the degree to which the Army attempts to argue that "Escander offers no evidence that he *filed an EEO charge* against any entity within 45 days of the alleged adverse action." (*Id.* (emphasis added).) Escander already demonstrated that the law only requires a showing of intent *to begin the EEO process* and not the *filing of an EEO charge* (Escander's Br. at 20 n.2), and so he will not belabor it further, except to add that even if that were not the case, Escander could not have filed an EEO charge against the Army in the EEOC Field Office if he had *wanted* to, and so any alleged lack of interest in filing a charge against the Army implied by the intake form is meaningless.

Turning to the actual relevant visit, the Army attempts to cast doubt on the relevance of Escander's contemporaneous statement to the Army EEO counselor, in which it was recorded that "he contacted the Garrison EEO Office the 2nd week of July 2014, and was told he could not file a complaint." (Army's Br. at 25.) The Army nonsensically argues that "it is ambiguous as to which entity, MLS or the Army, he sought to file an EEO charge" (*id.*), which is the other side of the coin from the previous point. Just like it would have been impossible for Escander to

8

file a complaint against the Army in the EEOC Field Office, it would also have been impossible for Escander to file a complaint against MLS in the Fort Bragg EEO office. Furthermore, any ambiguity is amply clarified by Escander's own testimony that he was told he could not file a complaint *because he was a contractor*. JA294. Simply put, no EEO officer in the Fort Bragg EEO office—or any agency EEO office—would tell a person that he could not file a complaint against a contractor because he was a contractor, and the Army's attempt to suggest that this was a reasonable possibility is frivolous.

The Army's final attempt to muddy the waters on this issue is meaningless, both factually and legally, and only warrants a brief refutation. The Army argues that "Escander cites no authority to support that contact within 45 days is optional or that it can be satisfied by other means." (Army's Br. at 25.) On the first point, this is an accurate statement; Escander has never argued that contact within 45 days is optional. Regarding the second point, Escander cannot discern the meaning of "it can be satisfied by other means" and has no response other than to restate the obvious: he attempted to initiate the EEO process with the Army EEO office within 45 days.

Regarding the logical next question of equitable tolling, the Army curiously argues that "Escander did not allege and he did not proffer evidence from which to reasonably infer that the Army prohibited him from filing an EEO complaint. (*Id.*

9

at 26.) While the Army might argue that Escander did not proffer sufficient evidence to allow that inference—although the record clearly shows that he did—its contention that he did not allege that the Army prohibited him from filing an EEO complaint is inexplicable. The only possible explanation is that the Army somehow maintains that the Army EEO officer telling Escander that he "could not file an EEO complaint against the Army," JA294, did not "prohibit him" from filing a complaint, as if there were any other means to do so besides the Army EEO office. To the extent that the Army is making this argument, it too is patently frivolous.

### III.   ESCANDER ESTABLISHED A *PRIMA FACIE* CASE

As an initial matter, the majority of the Army's argument on this matter was never raised before the District Court and should not be considered by this Court. Regardless of whatever competing authority might exist regarding the question of this Court affirming a decision based on something in the record not relied on by the District Court, it is undisputed that "a federal appellate court does not consider an issue not passed upon below" unless necessary "to promote the ends of justice" or because resolution of the question is beyond any doubt. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). *See also Walton v. Harker*, 33 F.4th 165, 175-76 (4th Cir. 2022) (collecting cases); *French v. Assurance Co. of Am.*, 448 F.3d 693, 707 (4th Cir. 2006) (quoting *Singleton*). Clearly ruling on this question does not "promote

10

the ends of justice," and resolution of the question is equally clearly not "beyond any doubt."

To the extent that the Court does indulge the Army, it should still soundly reject the arguments in their entirety. The first relevant argument is that "there is no basis reasonably to infer that Vines would have been consulted, and acquired firsthand knowledge, about Escander's behavior no matter how outrageous as he was not an employee under her supervision as SSI program manager" and that "[s]imilarly, there is no basis reasonably to infer that SSO program manager Vines would have firsthand knowledge about the Army's or Dr. Nabipour's position on Escander, an employee of another contracting vendor." (Army's Br. at 32.) In its attempt to win this case by any means necessary, the Army neglects to consider that *its own argument* ten pages later refutes this line of argument. In that section, the Army draws attention to the fact that Whitehead testified that MLS program manager David Putnam "told Whitehead that [Morkos Saad ("Saad")] found his own substitutes" (*id.* at 42 (quoting JA148)) and speculated that "it must have been Putnam who told Saad that Escander was banned from teaching at Fort Bragg." (*Id.* (citing JA148).) The Army has answered its own hypothetical question; if the Court credits Whitehead's testimony that MLS employee Putnam discussed the SWCS and perhaps Escander with SSI employees Morkos Saad and herself, then that would explain how Vines would know about the Army's or Dr. Nabipour's

11

position on Escander despite him being "an employee of another contracting vendor." (*Id.* at 32.)

Before moving to the next new argument, it is important to note that the Army admits that it is "undisputed" that Putnam "threatened to fire Escander [on 1 April 2014] for his complaints about Dr. Nabipour." (*Id.*) This is noteworthy for one key reason: it completely refutes the argument that Nabipour had not made negative comments about Escander. Escander did not send his complaint to LTC Simpson until *after* Putnam made that threat. JA302. Therefore, if Nabipour's feelings about Escander were accurately recorded as positive, JA280, then *why was Putnam threatening Escander*?

The Army's next new argument pertains to Escander's argument that deposing Vines was logistically unfeasible, and in making it the Army grossly distorts the record. The Army claims that "he offers no explanation for why he could not issue a subpoena to Vines during discovery," stating that "[t]he evidence reflects that Vines was reachable through her LinkedIn account." (Army's Br. at 33 n.8 (citing JA160).) The source of this claim is Whitehead's statement to the Army investigator that she did not know how to contact Vines but that she had a LinkedIn account. JA160. The Army neglects to mention, however, that after the lawyers for both Escander and the Army requested that he interview Vines, JA161, JA171, the Army investigator issued his own declaration stating that "contact

12

information for Ms. Vines was not available." JA247.² If neither the Army nor its investigator could locate Vines despite being told that she had a LinkedIn account, the Army cannot be heard to complain that she was "reachable" that way.

The next new argument raised by the Army is the unvarnished speculation that "a reasonable jury can infer that Vines' statement regarding a 'ban' was an internal strategic business decision by SSI, not a decision by the Army." (Army's Br. at 34.) Not only does this require the hypothetical jury to accept that a defense contractor would blatantly retaliate against a potential employee, thereby running the risk of an EEO complaint being filed against *it*, but it is contradicted, once again, by the Army's own later argument. If the Court credits Whitehead's speculation that MLS employee Putnam probably told Saad that Escander had been banned, then one of two things must be true: (1) the ban was not instituted by SSI; or (2) someone at SSI informed an MLS employee about it. The importance of the first option is clear, but the second option is equally fatal to the Army's case, because it refutes the allegation that Vines was unlikely to know about any ban because Escander worked for MLS. One cannot reconcile the idea that an SSI

---

² While it was not in the record before the District Court because neither party included it in an appendix, the reason for the investigator's statement was in the administrative record. After the investigator requested Vines's contact information from the Army, the Army replied: "Ms. Vines is not currently employed by MAP and the Government does not have her current email address or contact information."

13

employee would never know about something that happened to an MLS employee with the idea that an MLS employee would know about something that happened at SSI. Furthermore, it undercuts the entire argument that SSI was so dedicated to winning the next contract that it would retaliate against Escander just to gain "a strategic competitive advantage in the Darwinian defense contracting environment" (*id.* at 37) if the employees of the two firms are freely sharing such information with one another.

The final new argument—and the last argument worth addressing herein[3]—speaks further to SSI's alleged motivation for retaliating against Escander for his protected activity: that he "went over Putnam's head to MLS HR" and "also, egregiously, went outside the chain of command and complained not only to the client (LTC Simpson), but also to North Carolina's then-United States Senator, Kay Hagan." (*Id.* at 37.) In order for the Court to accept this possibility, it would have to conclude that SSI, an established government contractor, would not only retaliate against a potential employee for protected activity just to gain a competitive advantage, but that it would do so for a reason well-known to be explicitly prohibited. "[A] plaintiff engages in protected activity when he, 'feeling that the normal chain of command is unresponsive, reports wrongdoing outside of

---

[3] The Army does argue in passing that a job application coupled with testimony that the person did not get the job is just an "inquiry," not a "rejection" (*id.* at 45), but that argument is frivolous and does not warrant serious discussion.

14

normal channels.'" *Bonds v. Leavitt*, 629 F.3d 369, 382 (4th Cir. 2011) (quoting *Huffman v. OPM*, 263 F.3d 1341, 1354 (Fed. Cir. 2001)). *See also id.* at 381 (holding that a disclosure is only protected if it is made to "a higher authority who is in a position to correct the alleged wrongdoing") (quoting *Hooven-Lewis v. Caldera*, 249 F.3d 259, 276 (4th Cir. 2001)). This argument reveals more about the Army's attitude towards protected conduct than it does about Escander's case, and it is not reasonable to expect a reasonable jury to automatically draw the inference that SSI would commit such an illegal act based solely on the lack of absolute certainty in one witness's testimony. It is *possible* that a reasonable jury could draw that inference, but unless that is the *only* inference they can draw, summary judgment would be inappropriate with respect to this argument.

## **CONCLUSION**

For the foregoing reasons and those included in Escander's Opening Brief, the Court should reverse and remand the District Court's judgment.

15

Date: February 3, 2024

                                                        Respectfully submitted,

                                                        <u>/s/ Kelly B. McClanahan</u>
                                                        Kelly B. McClanahan, Esq.
                                                        D.C. Bar #984704
                                                        National Security Counselors
                                                        4702 Levada Terrace
                                                        Rockville, MD 20853
                                                        301-728-5908
                                                        240-681-2189 fax
                                                        Kel@NationalSecurityLaw.org

                                                        *Counsel for Appellant*

16

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-1656    Caption: Escander v. Wormuth

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __3789__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word 365 [*identify word processing program*] in 14-point Times New Roman [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Kelly B. McClanahan

Party Name Tamer Escander

Dated: 2/3/24